# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-00023-COA

**EDDIE LEE STEWART**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/26/1998 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM R. LABARRE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | 01/26/1998: CONVICTED OF BURGLARY OF A DWELLING HOUSE AND FOUND TO BE AN HABITUAL OFFENDER. DEFENDANT WAS SENTENCED TO 25 YEARS IN THE CUSTODY OF MDOC AND ORDERED TO PAY COURT COSTS OF $252.50 AND BOND FEE OF $20. |
| DISPOSITION: | AFFIRMED - 04/25/2000 |
| MOTION FOR REHEARING FILED: | |
| CERTIORARI FILED: | |
| MANDATE ISSUED: | 5/16/2000 |

BEFORE McMILLIN, C.J., LEE, AND MOORE, JJ.

LEE, J., FOR THE COURT:

¶1. Eddie Lee Stewart was convicted of burglary of a dwelling house and sentenced as an habitual offender. Stewart filed a motion for judgment notwithstanding the verdict or in the alternative a new trial. Said motion was denied by the trial court. Stewart has filed a timely appeal to this Court and presents the following issues on appeal: (1) whether the trial court committed reversible error when it failed to grant a continuance to Stewart in order to allow him to hire new counsel, (2) whether the evidence presented by the State was sufficient to prove the elements of burglary of a dwelling house and whether the verdict was against the overwhelming weight of the evidence, (3) whether the trial court erred when it failed to include in its instructions a provision dealing with circumstantial evidence, and (4) whether the trial court erred when it granted the State's motion to amend the indictment as to sentencing of the defendant, and whether the sentence was improper. Finding these issues to be without merit, we accordingly affirm the decision of the

lower court.

## FACTS

¶2. Stewart was jointly tried with Dexter Swanagan; however, Swanagan has not presented issues on appeal for this Court to review. Therefore, we will only address those facts necessary to Stewart's appeal. Steve Rogers and Fred Taylor lived adjacent to each other on Black Bayou Road. On June 30, 1997, Rogers was working at his cousin's. Around lunchtime, Rogers received a telephone call from his cousin's daughter. As a result of the call, Rogers was suspicious of "strange men going up to houses and knocking on their doors where there ain't no vehicles." Subsequently, Rogers went to check on his house and get some lunch.

¶3. When Rogers arrived at his house he noticed a vehicle in his driveway. Upon applying his brakes he passed his driveway and was able to see three people standing in Taylor's yard in possession of items, as well as observing several items laying on the lawn. Once Rogers viewed the individuals and personal property in Taylor's yard he proceeded to his house.

¶4. Rogers arrived at his house and removed the keys from the vehicle which was parked in his yard. Thereafter, Rogers went inside his house and called the sheriff's department. Rogers also retrieved a gun. Rogers then proceeded back outside where he witnessed two men running across his land to a wooded area, and a third man was located in the grass by a fence. Rogers witnessed the third man jump the fence. Eventually, Rogers was able to apprehend the third man, who was taken into the custody of the sheriff's department and later identified as Stewart. Subsequently, the owner of the house, Taylor, was notified of the alleged burglary and identified the personal property that was located on his lawn as his. Taylor also confirmed that all of the items were located in his house when he left for work that morning. It was also discovered that the car that was located in Roger's driveway belonged to Stewart.

¶5. Prior to trial, Stewart had written a letter to the clerk of the court explaining the presence of what he felt were problems between him and his attorney. At the conclusion of this letter, Stewart asked the clerk to reappoint him a lawyer. No formal motion was ever filed. Subsequently, on the day of trial Stewart made two requests for a continuance and new counsel. These requests were denied by the trial judge. Subsequently, Rogers was indicted and found guilty of the crime of burglary of a dwelling house.

## DISCUSSION

### I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO GRANT A CONTINUANCE TO STEWART IN ORDER TO ALLOW HIM TO HIRE NEW COUNSEL.

¶6. Stewart argues the trial court erred in denying him a continuance because not only did he request new counsel on the day of trial, but he had also made a such request prior to trial. This Court notes that this issue is procedurally barred based on two premises of the law. The first basis is the fact that Stewart failed to present this issue for review by the trial judge in the motion for judgment notwithstanding the verdict and new trial. *Harveston v. State*, 742 So. 2d 1163 (¶ 20) (Miss. 1999). The second basis is the fact that Stewart failed to cite any law in his brief to support this argument; therefore, he is not entitled to review of this issue. *Edlin v. State*, 523 So. 2d 42, 49 (Miss. 1998). Therefore, we decline to address the merits of this issue on appeal.

**II. WHETHER THE EVIDENCE PRESENTED BY THE STATE WAS SUFFICIENT TO PROVE THE ELEMENTS OF BURGLARY OF A DWELLING HOUSE AND WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

¶7. Stewart argues that the trial judge erred when he denied his motion for directed verdict and motion for judgment notwithstanding the verdict. Stewart also argues that the verdict of the jury was against the overwhelming weight of the evidence. This Court will first examine the contention that the trial judge erred when he failed to grant a directed verdict or judgment notwithstanding the verdict.

¶8. Stewart cites the cases of *Murphy v. State*, 566 So. 2d 1201, 1204 (Miss. 1990), and *Steele v. State*, 544 So. 2d 802, 808 (Miss. 1989), for the proposition that when a case is based *wholly* on circumstantial evidence, the State must prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. (emphasis added). In *Murphy*, 566 So. 2d at 1204-05, the supreme court cited *Wooldridge v. State*, 274 So. 2d 131 (Miss. 1973), which involved a case based on circumstantial evidence. The Court in *Murphy* explained that in *Wooldridge*, 274 So. 2d at 133, the case was purely circumstantial because (1) no one saw the suspect at or in the vicinity of the bank, (2) there were no fingerprints discovered, (3) none of the property stolen was found in the vehicle, although tools used by burglars were found, (4) said tools were not shown to have been used in the burglary, and (5) there was no direct evidence linking the suspect to the burglary. *Murphy*, 566 So. 2d at 1204-05. After reviewing the record in this case, this Court determines that the case at bar is distinguishable from *Murphy*, *Steele*, and *Wooldridge* because it was not based "wholly" on circumstantial evidence. In fact, the key distinguishing factor between the case at bar and the cases of *Murphy*, *Steele*, and *Wooldridge* is the fact that there was direct eyewitness testimony in the present case; therefore, this standard and heightened level of burden of proof does not apply. Additionally, Stewart presented no evidence on his behalf.

¶9. "Requests for a directed verdict and motions JNOV implicate sufficiency of the evidence." *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996). In particular, Stewart argues that there was insufficient evidence presented by the State to support a conviction on the count of burglary of a dwelling house.

¶10. When the trial court judges the legal sufficiency, as opposed to the weight of the evidence on a motion for a directed verdict, the trial court is required to consider evidence introduced in the light most favorable to the State and accept as true all of the evidence introduced at trial by the State, including all reasonable inferences that may be drawn therefrom. *Yates v. State*, 685 So. 2d 715, 718 (Miss. 1996). Any evidence that is favorable to the defendant must be disregarded during the consideration of the trial court in determining whether to grant a motion. *Id.* at 718.

¶11. When the court is making a determination on whether to grant a judgment notwithstanding the verdict, the court is "not at liberty to direct that the defendant be discharged short of a conclusion . . . that given the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." *Hicks v. State*, 580 So. 2d 1302, 1304-05 (Miss. 1991) (quoting *Pearson v. State*, 428 So. 2d 1361, 1364 (Miss. 1983)). Additionally, in *Hicks v. State*, 580 So. 2d 1302, 1305 (Miss. 1991), the Mississippi Supreme Court quoted from *McFee v. State*, 511 So. 2d 130, 133-34 (Miss. 1987), to repeat the standard which we as an appellate court are to apply in resolving the issue of whether the evidence is sufficient to sustain the jury's verdict:

When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence -- not just that supporting the case for the prosecution -- in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. (citations omitted).

This Court accepts the evidence in the light most favorable to the State and determines there was sufficient evidence presented through the testimony of the State's witnesses to support the State's theory and allow the jury to decide if Stewart was guilty as charged for burglary of a dwelling house.

¶12. At trial, the testimony of Steve Rogers identified Stewart as one individual who was present on Taylor's lawn. Rogers testified that he viewed Stewart and the others possessing and standing next to personal property which was located on Taylor's lawn. Additionally, Rogers testified that he witnessed Stewart abscond from Taylor's yard, and eventually, he personally apprehended Stewart. Furthermore, Taylor, the owner of the burglarized house, testified that the items which were located on his lawn belonged to him and were inside the house when he left for work that morning. Taylor also explained that he viewed an open window and the fact that the screen from said window had been removed and placed on his couch. He testified that the window was closed and the screen was in place when he left for work that morning. Finally, Taylor testified that an inspection of his room revealed that it "had been turned upside down."

¶13. Officer Barrett testified that a search of the vehicle parked in Roger's yard revealed that the car belong to Stewart. Stewart did not call witnesses on his behalf or testify at the trial himself. Instead, Stewart tried to discredit the witnesses and rebut this evidence by pointing to the fact that no fingerprints belonging to him were found at the scene; however, all of this testimony was sufficient to present a jury question. A trial judge can take the case from the jury only where there is no testimony that would warrant the jury, if the witness were believed, in finding a verdict. *Price v. State*, 207 Miss. 111, 41 So. 2d 37, 40 (1949).

¶14. Considering all of the evidence in the record and giving the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence, and if all the aforementioned evidence is taken as true, reasonable men could have found that Stewart was guilty. Accordingly, this assignment of error is without merit.

¶15. Stewart further contends that the trial court erred when it did not grant him a new trial because the verdict of the jury was against the overwhelming weight of the evidence. In *Benson v. State*, 551 So. 2d 188, 193 (Miss. 1989), the Mississippi Supreme Court provided the following explanation of when it would grant a new trial:

This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Groseclose v. State*, 440 So. 2d 297, 300 (Miss. 1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. *Temple v. State*, 498 So. 2d 379,

382 (Miss. 1986).

A motion for a new trial is within the sound discretion of the trial court. *Burge v. State*, 472 So. 2d 392, 397 (Miss. 1985). We have often stated that issues regarding the weight and credibility of evidence lie with the jury. *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995). We will reverse only where the evidence, as to at least one of the elements of the crime charged, is such that a reasonable and fair minded juror could not find the accused guilty. *Id.* In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court accepts as true all evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. *Id.*

¶16. The crime of burglary has two essential elements which are as follows: (1) the unlawful breaking and entering, and (2) the intent to commit a crime once entry is gained. *Ashley v. State*, 538 So. 2d 1181, 1183 (Miss. 1989). In the case at bar, this evidence was presented through the aforementioned testimony of Rogers, Taylor and Officer Barrett. It must be kept in mind that any discrepancies were properly resolved by the jury as fact finder because questions regarding weight and worth of witness testimony or witness credibility are for the jury to settle. *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995).

¶17. Accepting the evidence as true, as we are required to do, a review of the record reveals that the jury's verdict was not against the "overwhelming weight of the evidence" and to allow the jury's verdict to stand would not result in an "unconscionable injustice." We rule that the trial court did not abuse its discretion in failing to grant a new trial. We, therefore, find no reversible error by the trial court.

### III. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO INCLUDE IN ITS INSTRUCTIONS A PROVISION DEALING WITH CIRCUMSTANTIAL EVIDENCE.

¶18. Stewart contends that the trial court erred because all of the instructions given to the jury failed to include the language "the jury find the Appellant guilty beyond a reasonable doubt, and to the exclusion of every other reasonable hypothesis other than guilt." Just as was the case in issue one, this issue is procedurally barred because Stewart failed to present this motion in his judgment notwithstanding the verdict and he failed to cite legal authority to support this conclusion. *See Read v. State*, 430 So. 2d 832, 838 (Miss. 1983) ("Before an issue may be assigned and argued here, it must first have been presented to the trial court."); *see also Edlin v. State*, 523 So. 2d 42, 49 (Miss. 1998) (failure to cite legal authority bars appellate review). Additionally, a review of the record does not disclose that a jury instruction was offered by Stewart which contained the aforementioned language. Furthermore, there appears to have been no specific objection made by counsel for Stewart at the trial of this matter based on the omission of this language. In *Barnett v. State*, 563 So. 2d 1377, 1380 (Miss. 1990), (the court noted that Rule 5.03 of the Uniform Criminal Rules [now Uniform Circuit and County Court Rules Rule 3.07] requires a "specific objection" to the instruction and "specifically point out the grounds for the objection." Generally, a general objection waives any error). Therefore, we decline to address the merit of this issue on appeal and affirm the lower court.

### IV. WHETHER THE TRIAL COURT ERRED WHEN IT GRANTED THE STATE'S MOTION TO AMEND THE INDICTMENT AS TO SENTENCING OF THE DEFENDANT, AND WHETHER THE SENTENCE WAS IMPROPER.

¶19. Stewart asserts that the trial court erred when they allowed the State to amend the indictment relative to his habitual offender status. Originally, Stewart was charged as an habitual offender under Miss. Code

Ann. § 99-19-83 (Rev. 1994). The State moved to amend the indictment and said motion was granted by the trial judge. The indictment was amended to charge Stewart as an habitual offender under Miss. Code Ann. § 99-19-81 (Rev. 1994). The principal distinction between these statutes is that Miss. Code Ann. § 9-19-83 (Rev. 1994) requires that one of the previous felonies involve a crime of violence and that as a result the individual shall be sentenced to life in prison.

¶20. Originally, Stewart's indictment reflected that he had been convicted of the felony crime of aggravated assault which is a crime of violence, as well as other felonies of a non-violent nature. Subsequently, the State made an *ore tenus* motion to amend the indictment and proceed under Miss. Code Ann. § 99-19-81 (Rev. 1994). The prosecution explained that they wished to amend the indictment because an investigation revealed that the aggravated assault charge linked to Eddie Lee Stewart was not the same Eddie Lee Stewart in the case at bar; therefore, there was no crime of violence. The trial court cited *Nathan v. State*, 552 So. 2d 99 (Miss. 1989), to support the granting of the amendment of the habitual portion of the indictment. This Court agrees that *Nathan* is applicable to the case at bar.

¶21. In *Nathan*, the Mississippi Supreme Court addressed an issue substantially similar to the case at bar. *Nathan*, 552 So. 2d at 105. Nathan was indicted under § 99-19-83 as an habitual offender. *Id*. At a hearing, counsel for Nathan persuaded the trial judge that the prior convictions did not allow the court to sentence Nathan as an habitual offender under § 99-19-83; therefore, the trial judge allowed the indictment to be amended, and it charged Nathan as an habitual offender under § 99-19-81. *Id*. at 106. The supreme court acknowledged that for an amendment to an indictment to be permissible it must be one of form and not substance, and held that under these circumstances the change was one of form. *Id*. at 105. (citations omitted). The court based this decision on the fact that the amendment affected only sentencing and did not actually affect the underlying charges which Nathan was tried. *Id*. at 106-07.

¶22. The removal of the charge of aggravated assault from Stewart's indictment is acceptable under the logic applied in *Nathan*. As argued by the State, this amendment has in fact worked to Stewart's benefit because he was sentenced under a less harsh habitual offender statute. Additionally, the State represented at the sentencing hearing that it would be establishing Stewart's habitual status under the previous convictions which bore the cause numbers 18,032 and 16,906. These prior convictions reflecting the aforementioned cause numbers were listed in Stewart's original indictment.

¶23. Stewart cites to Rule 7.09 of the Uniform Circuit and County Court Rules for the following language: "Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." In the case at bar, Stewart fails to show how he was surprised, and for the reasons discussed above, this Court determines that there was no surprise. Additionally, Stewart did not ask for a continuance. The Mississippi Supreme Court has noted on more than one occasion that when a defendant fails to ask for a continuance when an indictment is amended he cannot later object on the basis of surprise and prejudice. *Nathan*, 552 So. 2d at 107. Finding no merit to this issue, we affirm the trial judge's granting of the amendment to the indictment.

¶24. **THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF BURGLARY OF A DWELLING HOUSE AND SENTENCE TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.**